UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JUSTIN B.,

              Plaintiff,

    -v-

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

_____

20-CV-01810-MJR
DECISION AND ORDER

       Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 15)

       Plaintiff Justin B.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act").  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the following reasons, Plaintiff's motion (Dkt. No. 11) is denied, and defendant's motion (Dkt. No. 13) is granted.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed for SSI on October 27, 2017, alleging a disability onset date of January 16, 2013 (later amended to October 27, 2017).  (Administrative Transcript ["Tr."] 165-170, 200).  The application was initially denied on May 11, 2018.  (Tr. 73-90).  Plaintiff timely filed a request for an administrative hearing.  (Tr. 95-114).   On December 9, 2019, Administrative Law Judge ("ALJ") William M. Weir held a video hearing from Buffalo, New York.  (Tr. 37-72).  Plaintiff appeared in Olean, New York, with counsel.  A vocational expert also testified at the hearing, via telephone.   The ALJ issued an unfavorable decision on December 24, 2019.  (Tr. 9-31).  On October 15, 2020, the Appeals Council denied Plaintiff's request for review.  (Tr. 1-6).  This action followed.

## DISCUSSION

I.      *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review.  The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).  The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588.  While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct.  The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence.  Further, the Commissioner's factual conclusions must be applied to the correct legal standard.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  Failure to apply the correct legal standard is reversible error.  *Id.*

II.   <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."   42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).   The Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*

§§404.1520(c), 416.920(c).  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  *Id.* §§404.1520(d), 416.920(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.* §§404.1520(e), 416.920(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations."  *Id.* §§404.1545(a)(1), 416.945(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.* §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is

not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 27, 2017, the application date. (Tr. 14). At step two, the ALJ found that Plaintiff had the following severe impairments: obesity; lumbago; cervicalgia; post-traumatic stress disorder ("PTSD"); an anxiety disorder; and an affective disorder. (Tr. 14-15). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15-17). Prior to proceeding to step four, the ALJ determined that Plaintiff had the following RFC:

> [C]laimant has the [RFC] to perform light work as defined in 29 CFR 416.967(b) except the claimant can occasionally bend, stoop, kneel, crouch and crawl. The claimant can perform simple, repetitive, one and two step tasks, with no complex work (defined as work involving multiple and simultaneous goals and objectives with a need to independently set quantity, quality or methods standards). The claimant can have . . . no more than one change per day in general work tasks or settings. The claimant must avoid caring for or dealing directly with children.

(Tr. 17-23).

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 23). At step five, the ALJ found that there exist jobs in significant numbers in

the national economy that Plaintiff can perform. (Tr. 24-25). Therefore, the ALJ found that Plaintiff was not disabled since October 27, 2017, the application date. (Tr. 25).

IV.   _Plaintiff's Challenge_

Plaintiff argues that the case must be remanded because:  (1) the ALJ improperly evaluated the medical opinions in the record resulting in the ALJ's RFC determination not being supported by substantial evidence; (2) the ALJ failed to close obvious gaps in the record and relied instead on his own lay opinion; and (3) the ALJ improperly diminished the Plaintiff's credibility.  The Court finds these arguments without merit.

The ALJ's physical and mental RFC Findings are supported by substantial evidence in the record. The RFC determination is "the most [a claimant] can still do despite [his] limitations," and is based upon all the relevant evidence in the case record. 20 C.F.R. § 416.945(a). The Second Circuit has held that it is the plaintiff who bears the burden of proving that his RFC is more restricted than that found by the ALJ, whereas the Commissioner need only show that the ALJ's decision was supported by substantial evidence in the record. _See Poupore v. Astrue_, 566 F.3d F.3d 303, 306 (2d Cir. 2009). As the Supreme Court just recently reaffirmed, "under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations. . . . And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." _See Biestek_, 139 S.Ct. at 1154.

Here, a review of the ALJ's decision shows that the ALJ properly considered the totality of the evidence in assessing Plaintiff's RFC, including treatment notes from Plaintiff's providers, Plaintiff's statements regarding his abilities and limitations, Plaintiff's

work activity from the relevant period, and the State agency prior administrative findings. The ALJ's RFC finding for light work with mental, postural, and environmental limitations is supported by substantial evidence in the record.

In assessing Plaintiff's complaints of neck and low back pain, the ALJ considered the radiological findings and objective medical evidence from Plaintiff's orthopedist, Dr. Keith Gembusia, and other medical providers. (Tr. 20). As the ALJ noted, a January 2016 cervical spine CT and October 2017 lumbar spine x-ray were both unremarkable (Tr. 20, 536, 787). While Plaintiff had tenderness in his neck and back, as the ALJ acknowledged, he also routinely exhibited normal range of motion, normal strength, intact sensation, and normal gait throughout the relevant period. (Tr. 20, 316, 319, 328, 334, 419, 486, 493, 546, 555, 623, 757, 1136, 1151, 1161, 1315, 1332, 1336, 1394). In October 2018 and April 2019, Plaintiff reported that walking significantly improved his back pain (Tr. 1259-60, 1276). This evidence substantially supports the RFC for light work with additional limitations. (Tr. 17).

In evaluating Plaintiff's complaints of disabling mental impairment symptoms, the ALJ considered the records and longitudinal mental status exam findings from Plaintiff's therapist, Liz Schumacher, LMSW, and his psychiatrist, Dr. Shahnawaz Meer. (Tr. 20-21). The ALJ also considered the mental status exam findings of Plaintiff's medical providers. (Tr. 20-21). The ALJ noted that despite Plaintiff's struggles with mood issues, he routinely demonstrated logical and sequential thought process, normal thought content, fair insight and judgment, fair or intact memory, and fair or intact attention span and concentration at routine psychiatric appointments. (Tr. 20-21, 546, 555, 558-59, 1148, 1161). Dr. Gembusia observed grossly normal mental status and normal judgment,

(Tr. 656, 1211), and appropriate attention span, concentration, and memory. (Tr. 1394, 1398). These objective findings substantially support the mental RFC finding.

In sum, the ALJ properly relied on the totality of the medical evidence and assessed an RFC finding that is consistent with the record. The ALJ considered that Plaintiff experienced neck and back pain during the relevant period and accounted for any difficulty by assessing an RFC for light work, which allows a "a good deal of walking or standing" and requires lifting no more than 20 pounds. *See* 20 C.F.R. § 416.967(b). Additionally, the ALJ accounted for Plaintiff's complaints of neck and back pain by limiting Plaintiff to only occasionally bending, stooping, kneeling, crouching, and crawling. (Tr. 17). The ALJ also accounted for Plaintiff's mental difficulties by limiting him to simple, repetitive, one and two step tasks, no more than one change per day, and no caring for or dealing with children. (Tr. 17). As such, the ALJ accounted for Plaintiff's symptoms and limitations in the RFC finding.

Plaintiff's argument that the ALJ's evaluation of the of Ms. Schumacher's opinion was conclusory is unavailing. The ALJ found Ms. Schumacher's opinions were unpersuasive and he sufficiently explained his reasoning. (Tr. 20-22).

Addressing supportability, the ALJ explained that Ms. Schumacher's opinions of disabling limitations were unpersuasive because her contemporaneous treatment notes (Ex. 28F) did not support such extreme limitations. (Tr. 22, 1164-84). The ALJ was required to address supportability and he did that by comparing Ms. Schumacher's opinions with her own treatment notes. *See* 20 C.F.R. 416.920c(b), (c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical

finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.").

Moreover, substantial evidence supports the ALJ's reasoning. The only mental status exam from Catholic Charities, where Ms. Schumacher worked, revealed impaired concentration and mood abnormalities, but also logical, organized, and goal-directed thought process, rational thought content, normal perceptions, intact attentiveness, fair memory, normal abstraction, and fair insight and judgment. (Tr. 1188-89). The rest of the contemporaneous records from Catholic Charities merely summarized therapy sessions with Plaintiff and contained no objective findings. (Tr. 1164-84). The one mental status exam from Catholic Charities does not explain or support the extreme limitations Ms. Schumacher opined. Therefore, the ALJ properly concluded that Ms. Schumacher's contemporaneous records did not support her opined limitations. (Tr. 22).

The ALJ was also required to address consistency in evaluating the persuasiveness of Ms. Schumacher's opinion, and the ALJ did that when he explained that Ms. Schumacher's opinions were inconsistent with the mental status exam findings from Plaintiff's psychiatrist (Ex. 10F, 26F) and Plaintiff's reported activities (Tr. 22). *See* 20 C.F.R. § 416.920c(b), (c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). In fact, Plaintiff's psychiatrist routinely observed logical and sequential thought process, normal thought content, fair insight and judgment, fair or intact memory, and fair or intact attention span and concentration despite his mood abnormalities. (Tr. 22, 546, 555, 558-59, 1148, 1161). These findings

undermine the extreme limitations Ms. Schumacher opined and substantially support the ALJ's reasoning.

The ALJ also found that Ms. Schumacher's opinions were inconsistent with Plaintiff's reported activities, which included performance of odd jobs like mowing lawns after the alleged onset date. (Tr. 22, 43, 62). The ALJ reasoned that Plaintiff's ability to navigate self-employment undermined the severe mental limitations Ms. Schumacher opined. (Tr. 22). Plaintiff contends this reasoning was erroneous, but an ALJ can properly reject a medical opinion based on daily activities. *See Pawlak v. Saul*, 19-cv-165-MJF, 2020 WL 3046204, at *7 (W.D.N.Y. June 5, 2020); *see also Medina v. Conm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020).

Based on the foregoing, substantial evidence supports the ALJ's evaluation of Ms. Schumacher's opinions. Contrary to Plaintiff's argument, the ALJ did not mischaracterize the evidence in evaluating Ms. Schumacher's opinion, rely on lay opinion, or find it unpersuasive because it was inconsistent with the RFC finding. Plaintiff did not explain his arguments, nor did he identify any mischaracterizations or circular reasoning. Issues not sufficiently argued are considered waived. *Poupore*, 566 F.3d at 306.

The ALJ also properly considered Dr. Gembusia's workers compensation disability rating. Dr. Gembusia did not opine functional limitations or abilities, so his disability rating was not an opinion the ALJ was required to evaluate in accordance with 20 C.F.R. § 416.920c. *See* 20 C.F.R. § 416.913(a)(3) (defining medical opinion). However, the ALJ was not prohibited from doing so. The ALJ chose to evaluate the persuasiveness of it and considered whether it was consistent and supported. (Tr. 22-23). Plaintiff has failed to identify any legal error in the ALJ's reasoning.

Plaintiff also suggests the ALJ improperly relied on the State agency consultants' findings over examining physician opinions, but his argument fails because under the applicable regulations that apply in this case, all opinions are considered using the same factors, consistency and supportability. *See* 20 C.F.R. § 416.920c(b)(2). Under these regulations, the ALJ can consider the examining relationship, but is not required to do so. *See id.* at § 416.920c(b)(3).

Plaintiff further suggests that the ALJ's RFC finding is not supported by substantial evidence because it is not based on a medical opinion but instead on the ALJ's lay opinion. However, Plaintiff's argument is flawed, as it improperly assumes that the ALJ is required to rely on medical opinion evidence in formulating the RFC finding. Contrary to Plaintiff's assumption, neither the Commissioner's regulations and rulings, nor relevant case law in the Second Circuit, require an ALJ to rely exclusively on a medical source opinion in articulating the RFC finding.

The regulations state an ALJ does not have to defer to any medical opinion or prior administrative medical finding. 20 C.F.R. § 416.920c(a). They also state that the ALJ, as opposed to a medical source, is "responsible for assessing [a claimant's] residual functional capacity." 20 C.F.R. § 416.946(c). Consistent with this directive, the regulations merely instruct the ALJ to "consider," as opposed to "choose" or "adopt," medical opinions in conjunction with all of the other medical and non-medical evidence of record. *Id.* at §§ 416.945(a)(3), 416.920c; *see id.* at §§ 416.920(a)(3), 416.920b. Notably, the word "consider" is also used in connection with all types of record evidence, including objective medical evidence, reports of a claimant's daily activities, and statements from claimant and lay witnesses. *See id.* at §§ 416.929(a), 416.945(a)(3). Consistent with the

- 12 -

regulations, Social Security Ruling 96-8p lists medical opinions as one of eleven types of evidence to consider in assessing an RFC, and assigns no priority to medical opinion evidence. SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). Similarly, the regulations pertaining to the ALJ's duty to assist with the development of a claimant's complete medical record state that while the agency "will make every reasonable effort to help [a claimant] get medical evidence from [the claimant's] own medical sources," the regulations do not require the agency to obtain a medical source opinion. *See* 20 C.F.R. § 416.912(d)(1); *See* 20 C.F.R. § 416.913(a)(1)-(3) (distinguishing between "medical opinions" and "other medical evidence").

Plaintiff suggests that the RFC must be tethered to a medical opinion and that ALJs cannot interpret medical findings without the assistance of a medical source. However, the regulations explicitly and repeatedly authorize the ALJ to do just that. The regulations direct the ALJ to assess the RFC "based on all the relevant evidence in your case record," including "medical evidence." 20 C.F.R. § 416.945(a); *See* 20 C.F.R. § 416.913(a)(1)-(3) (defining medical evidence); *see also* SSR 96-8p, 1996 WL 374184 at *5 (explicitly stating that the medical evidence an ALJ must consider in assessing the RFC includes "medical signs and laboratory findings."). Moreover, and even more tellingly, the regulations direct the ALJ to consider the supportability of a medical source opinion by evaluating the extent to which the source of the opinion has presented "objective medical evidence" to support the opinion. 20 C.F.R. § 416.920c(c)(1). Requiring an ALJ to credit at least one medical opinion, even if the only medical opinion of record contradicts the record at large, seems at odds with the Commissioner's promulgated regulatory directive that the ALJ consider the totality of the evidence in the record in assessing the RFC finding and overall

determination of disability. Additionally, the imposition of such a requirement would expand the agency's record development duties beyond a duty to assist with the development of a claimant's complete medical record to one that includes securing at least one opinion upon which the RFC must be based.

The Second Circuit has rejected similar arguments, having repeatedly affirmed the Commissioner in cases in which the ALJ reached an RFC finding without relying on a medical source opinion. *See, e.g. Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019); *Wright v. Berryhill*, 687 F. App'x 45, 48-49 (2d Cir. April 14, 2017); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. Jan. 8, 2017); *Johnson v. Colvin*, 669 F. App'x 44, 47 (2d Cir. Sept. 29, 2016); *Tankisi v. Comm. of Social Security*, 521 F. App'x 29 (2d Cir. 2013); *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013). The Second Circuit has done so where the record did not include a medical source opinion, *see Corbiere*, 760 F. App'x at 56, and where the ALJ rejected the only medical opinion of record. *See Monroe*, 676 F. App'x at 5. "Although the ALJ's conclusions may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 Fed App'x 53, 56 (2d Cir. 2013).

Plaintiff's argument that the record contained evidentiary gaps also fails. He has not actually identified any gaps in the evidence, and a review of the record reveals none. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999). Further development is not warranted when the evidence

already in the record is "adequate for [the ALJ] to make a determination as to disability." *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996). "[A]n ALJ is not required to order a consultative examination [such as cognitive testing] if the facts do not warrant or suggest the need for it." *Tankisi v. Comm'r Soc. Sec.*, 521 F. App'x 29, 32 (2d Cir. 2013) (unpublished) (citing *Lefever v. Astrue*, No. 5:07-cv-622 (NAM/DEP), 2010 WL 3909487, at *7 (N.D.N.Y. Sep. 30, 2010) aff'd 443 F. App'x 608 (2d. Cir. 2011), and *Yancey v. Apfel*, 145 F.3d 106, 114 (2d Cir. 1998)).

Plaintiff's only basis for this argument is that the record did not contain any medical opinions that mirrored the RFC finding. However, as explained above, the ALJ is not required to defer to any medical opinion, 20 C.F.R. § 416.920c(a), and is responsible for assessing the RFC based on the objective medical and other evidence of record. *See id.* at § 416.945(a).

Plaintiff has also failed to show that the ALJ erred in his evaluation of Plaintiff's subjective complaints. According to the Second Circuit, "the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). An ALJ should consider the following factors when evaluating a claimant's symptoms: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) any precipitating and aggravating factors; (4) medications taken to alleviate pain, including side effects and effectiveness; (5) treatment received to relieve pain; and (6) any other measures the claimant uses to relieve pain. *See* 20 C.F.R. § 416.929(c)(3); Social

Security Ruling (SSR) 16-3p, 2016 WL 1119029, at *7 (S.S.A. Mar. 16, 2016). The ALJ evaluates these factors in connection with the other evidence in the record to make a credibility determination. *See* 20 C.F.R. § 416.929(c)(4).

"The ALJ's Decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." *Cichocki v. Astrue*, 534 F.App'x 71, 75 (2d Cir. Sept. 5, 2013). "Generally, it is the function of the ALJ, not the reviewing court, to appraise the credibility of witnesses." *Tankisi*, 521 F. App'x at 35. Courts "have no reason to second-guess the credibility finding...where the ALJ identified specific record-based reasons for his ruling." *Stanton v. Astrue*, 370 F.App'x 231, 234 (2d Cir. Mar. 24, 2010).

Here, the ALJ evaluated Plaintiff's subjective allegations in accordance with the regulations and gave specific reasons for finding that they were not entirely consistent with the record evidence. (Tr. 19-20). As the ALJ explained, Plaintiff alleges disability, but he was self-employed as a lawn mower after the alleged onset date. (Tr. 43, 62). A claimant's work during the relevant period may speak to his ability to perform his RFC. *See Rivers v. Astrue*, 280 F.App'x 20, 23 (2d Cir. May 28, 2008) (noting that while claimant's work during the relevant period did not meet the threshold for substantial gainful activity, that he worked at levels consistent with light work). Further, an ALJ may properly consider a claimant's inconsistent statements, including those pertaining to work history, when arriving at a credibility determination. *See Morales v. Berryhill*, No. 14-cv-2803 (KMK) (LMS), 2018 WL 679566, at *17 (S.D.N.Y. Jan. 8, 2018) (citations omitted).

The ALJ also explained that Plaintiff's daily activities undermined his allegations of disabling symptoms. (Tr. 19). An ALJ may reject a claimant's subjective allegations in light of inconsistent evidence of daily functional ability. *Poupore*, 566 F.3d at 307; *see Wolfe v. Comm'r of Soc. Sec.*, 272 F. App'x 21, 22 (2d Cir. Apr. 1, 2008) (ALJ properly discounted claimant's credibility based on her statements that she attended church, shopped, and attended weekly football games); *Donnelly v. Barnhart*, 105 F.App'x 306, 308 (2d Cir. Jul. 1, 2004) (ALJ properly discounted credibility based on statements that claimant cooked dinner, folded clothes, and sewed). Here, as the ALJ noted, Plaintiff worked after the alleged onset date and hunted and cut up a deer. (Tr. 19, 43, 899). He also said he takes care of pets, prepares microwave meals, gets around by walking or riding in a car, shops in stores, watches television, and plays video games. (Tr. 19, 216-20).

The ALJ also considered Plaintiff's noncompliance in evaluating his subjective complaints. It was reasonable for the ALJ to believe that Plaintiff would have complied with his treatment providers' recommendations if he truly had disabling symptoms. *See, e.g., Wilson v. Colvin*, No. 6:16-CV-06509-MAT, 2017 WL 2821560, at *6 (W.D.N.Y. June 30, 2017) ("It was within the ALJ's discretion to conclude that Plaintiff's allegations of debilitating pain were undermined by her failure to follow up on the multiple—relatively conservative—treatment options offered to her such as chiropractic treatment, physical therapy, and epidural injections."); *Nicholson v. Colvin*, No. 6:13–CV–1296 (FJS/TWD), 2015 WL 1643272, at *7 (N.D.N.Y. Apr. 13, 2015) ("The ALJ properly considered Plaintiff's failure to comply with medication treatment as prescribed as a factor weighing against her credibility, particularly because she had continued counsel from her treatment

providers to maintain the medication regimen."). Plaintiff suggests that Plaintiff's non-compliance was a symptom of his impairments, but he has provided no evidence to support that assertion.

Finally, the ALJ explained that objective medical evidence did not support the claimant's allegations of disabling limitations. (Tr. 20). According to the agency's regulations, objective medical evidence "is a useful indicator to assist [the ALJ] in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms and the effect those symptoms, such as pain, may have on [the claimant's] ability to work." 20 C.F.R. § 416.929(c)(2).

The Second Circuit has made clear that it is the plaintiff who bears the burden of proving that her RFC is more restricted than that found by the ALJ, whereas the Commissioner need only show that the ALJ's decision was supported by substantial evidence in the record. *See Poupore*, 566 F.3d at 306. Moreover, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support his position. Indeed, the Supreme Court just recently reaffirmed that the threshold for "substantial evidence" is very low. *See Biestek*, 139 S.Ct. at 1154. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *See Brault*, 683 F.3d at 448; *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute their own judgment even if it might justifiably have reached a different result upon a *de novo* review); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's

resolution of conflicting evidence."). Plaintiff failed to meet his burden, and substantial evidence supports the ALJ's evaluation. Therefore, the ALJ's decision must be affirmed.

## <u>CONCLUSION</u>

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is denied and defendant's motion for judgment on the pleadings (Dkt. No.13) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      December 13, 2022
            Buffalo, New York

                                      MICHAEL J. ROEMER
                                      United States Magistrate Judge